# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KATHY DREW-KING, Acting Regional Director of   \*
Region 29 of the National Labor Relations Board,   \*
for and on behalf of the NATIONAL LABOR   \*
RELATIONS BOARD   \*
  \*
      Petitioner   \*   16-CV-1916
  \*   (SJF)(AKT)
   v.   \*
  \*
DEEP DISTRIBUTORS OF GREATER NY, INC.   \*
D/B/A THE IMPERIAL SALES INC.   \*
  \*
      Respondent   \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PETITION FOR ADJUDICATION AND ORDER IN CIVIL
## CONTEMPT AND FOR OTHER CIVIL RELIEF

# Table of Contents

I.    STATEMENT OF THE CASE.       .5

II.    FACTS.       .6

   a.    The Petition for Injunctive Relief.       .6

   b.    The July 5th 2016 Injunctive Order.       .6

   c.    Respondent's Post- Decree Conduct.       .8

     Respondent's Initial Non-Compliance.       .8

     Respondent Sent Invalid Offers Of Reinstatement To A Non-Party Attorney.       .8

     Respondent Excluded Agents Of The NLRB And The Union From The Reading Of The District Court Order And From Viewing The Posted District Court Order.       .9

   d.    July 29, 2016, Order.       .10

   e.    Respondent's Request For A Stay.       .10

   f.    Respondent's Refusal To Reinstate Augustin Sabillon And Roberto Reyes.       .11

   g.    Employment Application.       .13

   h.    Respondent's failure to file an affidavit regarding compliance with the District Court.       .13

III.    ARGUMENT.       .14

   a.    The Civil Contempt Standard.       .14

   b.    The District Court's Injunctive Order was clear and unambiguous.       .16

   c.    There is clear and convincing evidence that Respondent has not complied with the District Court Order.       .17

     Board law is clear that a Respondent cannot impose conditions, such as the completion of a job application, on the reinstatement of an employee.       .17

     Respondent Unlawfully Conditioned Sabillon And Reyes' Reinstatement On The Completion Of Employment Applications.       .19

     Board Law, and IRCA Are Clear That A Respondent Cannot Re-Verify The Immigration Status Of Employees Reinstated After Being Unlawfully Terminated.       .19

     Respondent Unlawfully Conditioned Sabillon And Reyes' Reinstatement On The Re-Verification Of Their Immigration Status.       .20

     Respondent Failed To File An Affidavit Of Compliance With The Court.       .21

   d.    Respondent Has Not Been Reasonably Diligent And Energetic In Attempting To Accomplish What Was Ordered.       .21

IV    CONTEMPT SANCTIONS.       .21

   1. Affirmative Purgation Order, Notice Remedies; Compliance Report.       .21

   2. Compensatory Remedies.       .22

   3. Prospective Fines.       .24

# Cases

*Adsco Mfg. Corp.,* 322 NLRB 217, 218 (1996)                                          .17
*Asseo v. Bultman Enterprises, Inc.,* 951 F. Supp. 307, 312 (D.P.R. 1996).            .23
*Aztec Bus Lines,* 289 NLRB 1021, 1026 (1988).                                        .18
*Bovee & Crail Constr. Co.,* 224 NLRB 509, 527 (1976).                                .18
*Champ Corp.,* 291 NLRB 803, 808 (1988)                                               .18
*Clark v. Int'l Union, UMWA,* 752 F. Supp. 1291, 1294 (W.D. Va. 1990).                .24
*Consolidated Freightways,* 290 NLRB 771, 772-773 (1988)                              .17
*Craw & Son,* 244 NLRB 241, 242 (1979).                                               .18
*Domsey Trading Corp.,* 310 NLRB 777, 781 (1993).                                     .20
*Flaum Appetizing Corp. & Local 460/640, Indus. Workers of the World a/k/a Indus. Workers of the
     World, New York City Gen. Membership Branch,* 357 NLRB 2006, 2011 (2011).         .19
*Gompers v. Bucks Stove & Range Co.* 221 U.S. 418, 450 (1911)                         .15
*Hensley v. Eckerhart,* 461 U.S. 424, 437 and n. 12 (1983);.                          .23
*Holo-Krome Co.,* 302 NLRB 452, 454 (1991).                                           .17
*Humphrey v. Southside Electric Cooperative, Inc.,* 104 LRRM 2589, 2592 (E.D. Va. 1979).  .24
*Hydro-Dredge Accessory Co.,* 215 NLRB 138 (1974).                                    .18
*Ivaldi v. NLRB,* 48 F.3d 444 (9th Cir. 1995);.                                       .18
*Jim Walters Resources, Inc. v. United Mine Workers of America,* 609 F.2d 165, 168 (5th Cir. 1980), citing
     *Maness v. Meyers,* 419 U.S. 449, 458 (1975)                                      .15
*John B. Stetson Co. v. Stephen L. Stetson Co.,* 128 F.2d 981, 983 (2d Cir. 1942).    .16
*Levine v. Fry Foods, Inc.,* 108 LRRM 2208, 2212 (N.D. Ohio 1979), affd. 657 F.2d 268 (6th Cir. 198 1);. .23
*Local 28, Sheet Metal Workers v. EEOC,* 478 US 421, 441 n.21 (1986).                 .16
*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir.1989),. .22
*McComb v. Jacksonville Paper Co.* 336 U.S. 187, 192 (1949).                          .15
*Milburn v. Coughlin,* 83 F. App'x 378, 380 (2d Cir. 2003).                           .22
*NLRB v. A-Plus Roofing,* 39 F.3d 1410, 1419 (9th Cir. 1994)                          .24
*NLRB v. Ironworkers Local 86,* 79 LRRM 2723, 2724 (9th Cir. 1972).                   .22
*NLRB v. J.P. Stevens & Co.* 563 F.2d 8, 16 (2d. Cir. 1977).                        .15, 24
*NLRB v. J.P. Stevens & Co.,* 81 LRRM 2285 (2d Cir. 1972)                             .24
*NLRB v. Local 3, IBEW,* 471 F.3d 399, 403 (2d Cir. 2006);                        .15, 23, 24
*NLRB v. S. E. Nichols of Ohio, Inc.,* 592 F. 2d 326, 326-327 (6th Cir. 1974).      .22, 24
*NLRB v. Service Employees Local 77,* 123 LRRM 3213, 3214-3215 (9th Cir. 1986);      .22
*NLRB v. Teamsters Local 85,* 101 LRRM 2933, 2934-2935 (9th Cir. 1979);.             .22
*NTN Bower Corp.,* 356 NLRB 1072, 1125 (2011)                                         .18
*Oil, Chemical Workers v. NLRB,* 547 F.2d 575, 597 (D.C. Cir. 1976).                 .22

*Overstreet v. SFTC, LLC*, No. 13-CV-0165 RB/LFG, 2013 WL 3921178, at *10 (D.N.M. July 26, 2013)
.20

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Technologies, Inc.*, 369 F.3d 645, 657
(2d Cir. 2004),. .22, 23

*Perfect Fit Ind., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir.). .24

*Performance Friction Corp.*, 335 NLRB 1117, 1124 & n.35, 1165-66 (2001). .18

*Powell v. Ward*, 643 F.2d 924, 931 (2nd Cir. 1981) .15

*Ramos v. Lamm*, 713 F. 2d 546, 553 (10th Cir. 1983). .23

*Rushton & Mercier Woodworking Co. Inc.*, 203 NLRB 123, 127, enfd. 86 LRRM 2151, 75 LC ¶10, 384
(C.A. 1, 1974). .18

*SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) .15

*Sheet Metal Workers v. EEOC*, 478 U.S. 421 (1986);. .23

*Sunol Valley Golf Club*, 310 NLRB 357, 373 (1993). .18

*Szabo v U.S. Marine Corp.*, 819 F.2d 714, 718 (7th Cir. 1987). .16

*United Mine Workers of America v. Bagwell*, 512 U.S. 821, 838 (1994). .23

*United States v. United Mine Workers of America*, 330 U.S. 258, 293 (1947) .15

*United States v. United Mine Workers*, 330 U.S. 258, 304 (1947); .24

*Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979). .22

*W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 665 fn. 5 (2d Cir. 1970). .23


**STATUTE**
8 CFR § 274a.2(b),(1),(viii),(A),(5). .19

4

## I.  STATEMENT OF THE CASE

Counsel for Petitioner moves this Court, for and on behalf of the National Labor Relations Board ("The Board"), to adjudicate Deep Distributors of Greater NY, Inc. d/b/a the Imperial Sales ("Respondent") in civil contempt of this Court and to grant other civil relief for having violated and disobeyed, and for continuing to violate and disobey, the Injunctive Order issued by this Court on July 5, 2016, which granted the Petitioner's petition for injunctive relief in its entirety.

Since the issuance of this Court's Injunctive Order, Respondent has engaged in willfully contumacious conduct aimed at avoiding compliance with the Order. Respondent has obstructed Petitioner's efforts to secure compliance with the Injunctive Order at every stage of the process. In that regard, Respondent sent the unlawfully discharged employees' offers of reinstatement to a non-party attorney instead of to Counsel for Petitioner; Respondent refused to allow Board agents inside its facility for the reading of the Injunctive Order; and Respondent refused to grant Board Agents access to its facility to view the posted Order to monitor compliance with the posting requirement. Respondent's willful disregard of the Court's July 5th Injunctive Order resulted in a second District Court Order dated July 29, 2016, in which this Court again directed Respondent to comply with the mandates of the July 5th, 2016, Order.

Notwithstanding this second District Court Order, Respondent has now failed to comply with the most critical portion of the Injunctive Order which required Respondent to reinstate the unlawfully discharged employees. The reinstatement of unlawfully terminated employees is the most vital and substantial remedy available under the NLRA. After initially engaging in outrageous conduct to avoid compliance with almost all provisions of the Injunctive Order,

5

Respondent has now refused to comply with the reinstatement mandate. In addition, Respondent has failed to comply with the part of the Injunctive Order requiring Respondent to notify the court within twenty-one days of the Order of the steps that Respondent has taken to comply with the Order. Based on Respondent's willful failure to comply with the terms of the July 5, 2016, Injunctive Order, Petitioner moves this Court to adjudicate Respondent in civil contempt of this Court.

In support thereof, Petitioner respectfully shows as follows:

## II.    FACTS

### a.    The Petition for Injunctive Relief

On April 19, 2016, Petitioner filed with this Court a Petition for Injunction under Section 10(j) of the National Labor Relations Act, as amended (the "Act"), 29 U.S.C. § 160(j), seeking a temporary injunction enjoining and restraining Respondent from engaging in certain conduct violative of the Act, and affirmatively directing Respondent to take certain ameliorative action, including reinstating five unlawfully terminated employees.

### b.    The July 5th 2016 Injunctive Order

On July 5, 2016, this Court granted the requested injunctive relief. The Court found that there was reasonable cause to believe that Respondent violated the Act by giving employees the impression that their Union activities were under surveillance, threatening employees with reprisals and suggesting that support for the Union would be futile, interrogating employees regarding other protected activities, implementing work rules in retaliation for their protected activities, and by discharging employees for actions relating to their Union and other protected activities. (Contempt Pet. Ex. A, pg. 13) The Court further found that relief was just and proper

to restore the status quo regarding the Union's efforts to organize. (Id. at pg. 14) The Court affirmatively directed Respondent to:

a) Within seven (7) days of the entry of the District Court Order, offer immediate reinstatement to Henry Hernandez, Augustin Sabillon, Jose Michel Torres, Jose Roberto Reyes, and Javier Reyes to their former jobs, without prejudice to their seniority or any other rights or privileges previously enjoyed;

b) Provide a list of current employees' names and addresses to the Union upon request;

c) Within seven (7) days of the entry of the District Court Order, post copies of the District Court Order at all locations where Respondent's notices to employees are customarily posted, and grant to agents of the Board reasonable access to Respondent's facility to monitor compliance with the posting requirement;

d) Within fourteen (14) days of the entry of the District Court Order, convene a mandatory meeting of all employees on work time, and require a high level official of Respondent to read the District Court Order to all employees in the presence of the Union and NLRB officials; and

e) Within twenty-one (21) days of the entry of the District Court Order, file with the District Court, and serve upon Petitioner, an affidavit from a responsible Respondent official that describes with specificity how Respondent complied with the District Court Order, including the exact locations where Respondent has posted the materials required under this Order. (Contempt Pet. Ex. A at pg. 18)

With regard to Respondent's request in its Opposition to the Petition for Injunctive Relief for a hearing to verify the eligibility of the discriminatees to work in the United States, Judge

Feuerstein noted that Respondent "has not provided any evidence that the discharged employees were not authorized to work in the United States. Presumably, Respondent complied with IRCA when it hired the workers. Absent some proof, Respondent cannot now claim that those same workers are not authorized to work in the United States." (Id. at pg. 16)

Petitioner served Respondent and its counsel with a hard copy of the District Court order via overnight mail delivery on July 12, 2016. (Contempt Pet. Ex. B)

  c.  Respondent's Post- Decree Conduct

Since the Court issued the July 5th, 2016, Injunctive Order, Respondent has engaged in willful conduct aimed at avoiding compliance with the terms of the Order. Petitioner submits that this conduct demonstrates Respondent's utter disregard for the Injunctive Order and supports Petitioner's request to find Respondent in civil contempt.

  i.  Respondent's Initial Non-Compliance

*Respondent Sent Invalid Offers Of Reinstatement To A Non-Party Attorney.*

The District Court Order clearly and unambiguously required that Respondent offer the named discriminatees reinstatement to their former jobs within seven days of the issuance of the District Court Order, which was July 12, 2016. On Monday, July 11, 2016, Respondent's counsel deceptively emailed a purported offer of reinstatement to Jordan El-Hag, an attorney involved in an unrelated Fair Labor Standards Act lawsuit. El-Haj did not represent any discriminatees or any party in the proceeding before the Board. Respondent did not serve the Petitioner or otherwise notify Petitioner that it had made the purported offers of reinstatement to El Hag. (Contempt Pet. Ex. C)

In addition to its deliberate failure to make offers of reinstatement to each discriminatee, Respondent's purported offer of reinstatement itself was improper because it did not give the named individuals the required reasonable period of time within which to consider the offer and make the necessary arrangements to resume employment with Respondent. *Esterline Elecs. Corp.*, 290 NLRB 834, 835 (1988). (Id.)

> *Respondent Excluded Agents Of The NLRB And The Union From The Reading Of The District Court Order And From Viewing The Posted District Court Order*

At the same time that Respondent was avoiding compliance with the reinstatement requirement of the District Court Order, Respondent engaged in conduct to avoid the proper reading of the District Court Order and to deny the NLRB from viewing the posted Order, thereby preventing the NLRB from monitoring Respondent's compliance with the Court's posting requirement. Pursuant to the Order, Respondent was required to convene a mandatory meeting of all employees where it would read the Order in the presence of both an agent of the NLRB and an official of the Union. On July 19, 2016, at around 4:45 pm, Respondent assembled a group of individuals for the reading of the Order in its warehouse in Bethpage, New York. Respondent and its counsel refused to allow Board Attorneys Emily Cabrera and Henry Powell, and Union representative Wester Febres inside its warehouse where it was conducting the reading. Rather, Respondent relegated the NLRB and Union agents to an area outside of the warehouse on the ground level of the loading dock area, standing about five feet or so below the area where the reading was taking place. Neither the Board agents nor the Union agent could fully see into the warehouse nor could the employees inside the warehouse see the Board or Union agents. (Contempt Pet. Ex. D.)

The Order also required that Respondent grant to agents of the NLRB reasonable access to Respondent's facility to monitor compliance with the requirement that Respondent post the Order at its facility. Respondent failed to comply with these requirements.After the reading, counsel for the Region requested access to Respondent's facility to view the posted District Court Order as required by the clear and unambiguous language of the Order. Respondent flatly refused. Through this conduct, Respondent, through its counsel, flagrantly disregarded the clear mandates of the District Court Order. (Id.)

     d.  July 29, 2016, Order

Based upon the above conduct, this Court ordered the parties to appear for a hearing before the Honorable Judge Sandra Feuerstein to discuss Respondent's non-compliance with the Order. Based on that hearing, on July 29, 2016, Judge Feuerstein issued a second Order, requiring Respondent to, 1) mail valid offers of reinstatement to the named employees by August 2nd; 2) convene another mandatory meeting by August 9th, at which a high level official would read the District Court Order in the presence of one Board agent and one Union representative; and 3) that Respondent grant the Board agents access to its facility to view the posted District Court Order to monitor compliance with the Court's posting requirement. (Contempt Pet. Ex. E)

     e.  Respondent's Request For A Stay

Even after receiving the July 29, 2016 Order, Respondent tried to avoid compliance. Without any explanation other than vaguely citing to "scheduling issues," Respondent filed a request to stay the re-reading of the District Court Order until August 12th (Contempt Pet. Ex. G) Judge Feuerstein granted an extension of the reading on the condition that the reading take place by August 11th, and that Respondent provide an explanation for why the reading could not take place on August 9th (Contempt Pet. Ex. H)

Despite this clear directive from Judge Feuerstein, Respondent made another request to stay the reading until August 12th to avoid compliance. Judge Feuerstein denied this request and ruled that the reading had to take place on August 11th at 4:30 pm. (Contempt Pet. Ex. J)

On August 11, 2016, Respondent finally conducted the reading of the Injunctive Order in the presence of a Board and Union agent, and granted the Board agent and Union agent access to its facility to view the posting of the Order. Respondent also mailed offers of reinstatement to the named discrminatees on July 29th (Contempt Pet. Ex. F) The offers instructed the employees to report to work on August 19th, 2016, at 11:00 am if they were interested in reinstatement with Respondent. Unlike the previous offer, this offer gave the employees the option of arranging another start date if the employee could not start on the 19th However, these offers proved to be nothing more than a sham as Respondent had no intention of actually permitting the workers to return to work.

### f.  Respondent's Refusal To Reinstate Augustin Sabillon And Roberto Reyes

On August 19th, 2016, at 10:45 am, discriminatees Augustin Sabillon and Jose Roberto Reyes reported to Respondent's facility to commence employment pursuant to Respondent's July 29th offer. When the two first arrived, all doors were locked. (Contempt Pet. Ex. L, pg.1 and M, pg.1) After a few minutes, General Manager Tony Bindra came to the front entrance of the facility and opened the door for the two discriminatees and escorted them into the hallway in front of his office. (Contempt Pet. Ex. L, pg.1 and M, pg.1) When they arrived in the hallway, the employees could see that Danny Bindra, (Tony Bindra's brother and the owner of Respondent) was standing in the doorway to the office, filming them on his cell phone. (Contempt Pet. Ex. L, pg.1-2, and M, pg.1-2)

Tony Bindra read from a "folder," in English. He asked Sabillon and Reyes if they were ready to work. They replied, "yes." (Contempt Pet. Ex. L, pg.1 and M, pg.2) Tony Bindra then handed Sabillon and Reyes three documents: an employment application, an immigration form, and a third document which the employees believed involved company rules. (Contempt Pet. Ex. L, pg.2 and M, pg.2) Tony Bindra then told Sabillon and Reyes that they had to go back to their cars to fill out the documents and that they should return the documents to him before five o'clock that afternoon. Sabillon and Reyes said okay and then left. (Id.)

As the two employees were getting into their vehicles, they saw that Tony Bindra had exited the building and was motioning for the two to come back inside. Sabillon and Reyes got out of their vehicles and returned to the building. Tony Bindra brought the two back inside the hallway in front of Tony Bindra's office. Danny Bindra was again standing in the doorway to the office filming the employees with his cell phone. Tony Bindra told the workers that he had to re-read a document to them. Tony Bindra also asked the employees to return the papers he had given them. Both workers returned the papers. Roberto Reyes then told Tony Bindra that they needed someone who spoke Spanish because they did not fully understand what Tony Bindra was reading. Tony Bindra then called a worker named "Karina" to assist with the translation. (Contempt Pet. Ex. L, pg.2 and M, pg.2)

Once Karina arrived, Tony Bindra read the document. Karina translated that Bindra was asking if the employees were ready to work. Both Sabillon and Reyes replied that they were ready to work. Tony Bindra said okay and handed them the employment application only. Tony Bindra told the employees that once they filled out the applications, he would give them the other documents. Tony Bindra also told Sabillon and Reyes that they had submit to Respondent identification so Bindra could verify their immigration status. (Contempt Pet. Ex. L, pg.2 and M,

pg.2) Reyes said that he thought that they were going to start working at 11:00 am. Tony Bindra said that they had to first fill out the papers. The two then left. (Contempt Pet. Ex. M, pg.2)

g. Employment Application

Both discrminatees were handed employment applications. The applications ask for information such as name, address, social security number, work authorization status, education history, and employment history. The application is an application that Respondent gives to new prospective job applicants, rather than merely checking that the employees' pertinent information had not changed since the time of their discharge. (Contempt Pet. Ex. J)

h. Respondent's failure to file an affidavit regarding compliance with the District Court

Judge Feuerstein's July 5, 2016, Order required that within twenty-one days of the entry of the Court's Order, Respondent file with the Court a sworn affidavit that describes with specificity all the steps that Respondent took to comply with the District Court Order. The twenty-first day after the entry of the July 5th Order was July 26th Perhaps because it knew that it had no intention of fully complying with the Injunctive Order, Respondent failed to file the sworn affidavit. Thus, in addition to the refusal to reinstate, Respondent has not complied with the Court's mandate that it file a compliance affidavit with the Court.

Although Petitioner requested Respondent's position on compliance and the institution of contempt proceedings, Respondent never replied or offered any other explanation. (Contempt Pet. Ex. N)

## III.     ARGUMENT

The evidence shows that since the issuance of this Court's July 5, 2016, Injunctive Order, Respondent has engaged in outrageous conduct to avoid compliance with almost all provisions of the Order. Respondent's initial efforts to flout the District Court Order resulted in this Court's issuance of a second Order on July 29, 2016, which instructed Respondent to comply with the mandates of the July 5, 2016, Injunctive Order. Although Respondent finally complied with certain portions of the Injunctive Order, it has failed and refused to fully comply.

In that regard, there is clear and convincing evidence that Respondent failed to comply with the most crucial mandate of the District Court Injunctive Order- the reinstatement of the discriminatees. Although Augustin Sabillon and Jose Roberto Reyes reported to work on August 19, 2016, Respondent refused to allow them to work. Rather, Respondent conditioned their reinstatement on the completion of an employment application, as if they were new employees, and upon the re-verification of their work authorization status. These conditions are unlawful under Board law and under the Immigration Reform and Control Act ("IRCA").

In addition, Respondent did not comply with the District Court's mandate that it notify the District Court of the steps it took to comply with the Order. Thus, as discussed more fully below, Respondent has not fully complied with the District Court's Order and contempt proceedings should be instituted.

### a.  The Civil Contempt Standard

The Court's Injunctive Order issued on July 5, 2016, has been in effect since that time and at least since Petitioner's service of the Order upon Respondent on July 12, 2016. It is an axiom of Federal jurisprudence that an "order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper

proceedings. *United States v. United Mine Workers of America*, 330 U.S. 258, 293 (1947). This is so because the "interests of orderly government demand that respect and compliance be given" to such orders, and a party who "willfully refuses his obedience, does so at his peril." *Id.* at 303. "No one, no matter how exalted his public office, or how righteous his private motive, can be judge in his own case. That is what courts are for." *Id.* at 308-309 (Just Frankfurter concurring); see also, *McComb v. Jacksonville Paper Co.* 336 U.S. 187, 192 (1949) ("The [respondents] undertook to make their own determination of what the decree meant. They acted at their peril.")

"A court has the inherent power to hold a party in civil contempt in order to enforce compliance with an order of the court or to compensate for losses or damages." *Powell v. Ward*, 643 F.2d 924, 931 (2nd Cir. 1981) (citations, quotations omitted). The power of the courts to "punish for contempt is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981), quoting *Gompers v. Bucks Stove & Range Co.* 221 U.S. 418, 450 (1911). A respondent may be held in contempt "if the order is clear and unambiguous, the proof of noncompliance is clear and convincing, and the defendant has not been reasonably diligent and energetic in attempting to accomplish what was ordered. " *Powell v Ward*, 643 F.2d at 931 (citations, quotations omitted). The "basic proposition is that all orders and judgments of courts must be complied with promptly." *Jim Walters Resources, Inc. v. United Mine Workers of America*, 609 F.2d 165, 168 (5th Cir. 1980), citing *Maness v. Meyers*, 419 U.S. 449, 458 (1975). The contempt need not be willful. *NLRB v. Local 3, IBEW*, 471 F.3d 399, 403 (2d Cir. 2006); *NLRB v. J.P. Stevens & Co.* 563 F.2d 8, 16 (2d. Cir. 1977).

Because a Section 10(j) decree orders a party to comply with the relevant principles of the NLRA, it "implicitly incorporate[s] the basic principles that the Labor Board and the courts

have developed to guide the application of these provisions." *Szabo v U.S. Marine Corp.*, 819

F.2d 714, 718 (7th Cir. 1987). Thus, the court should look to labor law principles to determine

whether a respondent is in compliance with its Section 10(j) order. *See Id.*

Once a prima facie case of civil contempt is established, the burden shifts to the

respondent to present its defenses. *Donavan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 59 (2d. Cir.

1984) A respondent may not defend against a civil contempt citation by trying to re-litigate the

legal or factual basis of the order alleged to have been breached. *See e.g. Local 28, Sheet Metal

Workers v. EEOC,* 478 US 421, 441 n.21 (1986), and the cases cited therein. Nor may a

respondent defend itself by reliance on a hyper technical reading of an order. *John B. Stetson Co.*

*v. Stephen L. Stetson Co.,* 128 F.2d 981, 983 (2d Cir. 1942) ("it is proper to observe the object

for which the relief was granted and to find a breach of the decree in a violation of the spirit of

the injunction, even though its strict letter may not have been disregarded.")

b. **The District Court's Injunctive Order was clear and unambiguous**

The District Court's July 5, 2016, Injunctive Order was clear and unambiguous. The

Order, in plain, unequivocal language, required Respondent to offer immediate reinstatement to

the named discriminatees, without prejudice to any rights or privileges they previously enjoyed.

If Respondent felt that there were some ambiguity about the Order, Respondent could have

raised this issue with Judge Feuerstein at the July 26th hearing. However, Respondent raised no

such issue and Judge Feuerstein reiterated her directive to offer immediate reinstatement to the

named disrciminatees in her Order of July 29, 2016.

In addition, the Court's directive to file a sworn affidavit with the Court within twenty-

one days of the entry of the July 5th Order was equally unambiguous. The fact that Respondent

did not raise any issues regarding the Order being ambiguous at the July 26th hearing, confirms

that the Order was, in fact, clear and unambiguous.

    c.  **There is clear and convincing evidence that Respondent has not complied with the District Court Order**

Both Augustin Sabillon and Roberto Reyes testified that Respondent did not permit them

to work on August 19th Rather, the discriminatees testified that Respondent handed them

employment applications, applications that required typical "new-hire" information such as work

history and work authorization status. In addition to requiring the employees to complete and

submit new employment applications, Respondent also directed the employees to bring back

identification so that Respondent could re-verify their immigration status.

    i.  *Board law is clear that a Respondent cannot impose conditions, such as the completion of a job application, on the reinstatement of an employee*

Under Board law, which should be applied here to determine whether Respondent is in

compliance with the 10(j) Order,[1] an offer of reinstatement to discriminatees must be "specific,

unequivocal, and unconditional." *Adsco Mfg. Corp.,* 322 NLRB 217, 218 (1996); *Consolidated

Freightways,* 290 NLRB 771, 772-773 (1988) (employer's offer to reinstate discriminatee with

warning letter to be placed in his file was clearly conditional and thus not valid), *enforced as

modified* 892 F.2d 1052) (D.C.Cir. 1989). Thus, where an employer reserves discretion to dictate

the nature of the employment being offered, it is not a valid offer of reinstatement. *See, e.g.,

Adsco Mfg. Corp.*, 322 NLRB at 218 (offer that stated "in consideration of your skill and ability"

and request to "call for an appointment. .to review your employment" established an undertone

conveying that the employer was reserving discretion to dictate the nature of the employment

being offered); *Holo-Krome Co.*, 302 NLRB 452, 454 (1991) (employer's letter stating that

---

[1] *Szabo v. U.S. Marine Corp.,* 819 F.2d 714, 718 (7th Cir. 1987)

employer wanted to talk regarding a job opportunity for which discriminatee was qualified did not constitute a valid offer of employment), *enforcement denied on other grounds* 947 F.2d 588 (2d Cir. 1991), *rehearing denied* 954 F.2d 108 (2d. Cir. 1992).

Likewise, where the employer's offer of reinstatement treats a discriminatee as an applicant for employment, it is not a valid offer. *See, e.g., Craw & Son,* 244 NLRB 241, 242 (1979) ("It has long been established by the Board that the requirement that a discriminatee undergo a physical examination renders an offer of reinstatement conditional because the imposition of such requirement treats the discriminatee as an applicant for employment."), *enforced mem.* 622 F.2d 579 (3d. Cir. 1980). In addition, the Board has long held that a reinstatement offer that is akin to an invitation to apply for work, does not constitute a valid offer of reinstatement. See: *Bovee & Crail Constr. Co.,* 224 NLRB 509, 527 (1976); *Hydro-Dredge Accessory Co.,* 215 NLRB 138 (1974); *Rushton & Mercier Woodworking Co., Inc.,* 203 NLRB 123, 127, enfd. 86 LRRM 2151, 75 LC ¶10, 384 (C.A. 1, 1974), cert. denied 419 U.S. 996 (1974) ("simply offering the employees jobs as new hires, [is] something clearly less than they were entitled to receive.")Specifically, the Board has held that it is unlawful for an employer, absent business justification, to require that discriminatees fill out additional paperwork before reinstatement, such as a return to work log,[2] or an employment application.[3]

---

[2] *See, e.g., NTN Bower Corp.,* 356 NLRB 1072, 1125 (2011) (requirement that striking employees sign a return to work log unlawful because requiring former strikers to take steps beyond a union's unconditional offer to return, such as completing additional paperwork, violates the Act).

[3] *See, e.g., Performance Friction Corp.,* 335 NLRB 1117, 1124 & n.35, 1165-66 (2001) (requirement that discriminatees fill out new employment applications and treatment of discriminatees as new employees made reinstatement offers invalid); *Sunol Valley Golf Club,* 310 NLRB 357, 373 (1993) (unlawful to treat returning strikers as new hires who have to complete employment applications), *enforced sub nom. Ivaldi v. NLRB,* 48 F.3d 444 (9th Cir. 1995); *Champ Corp.,* 291 NLRB 803, 808 (1988) (employer violated the act by requiring returning striker to "execute an application    and accept employment as a new employee."), *enforced* 933 F.2d 688 (9th Cir. 1990). *Cf. Aztec Bus Lines,* 289 NLRB 1021, 1026 (1988) (evidence was insufficient to demonstrate that returning strikers were required to fill out employment applications as new employees).

### ii. Respondent Unlawfully Conditioned Sabillon And Reyes' Reinstatement On The Completion Of Employment Applications

Here, Respondent conditioned Sabillon's and Reyes' reinstatement upon the completion of employment applications which included information such as work history and work authorization status. Both Sabillon and Reyes had worked for Respondent for significant periods of time. (Sabillon began working for Respondent in 2010, while Reyes began employment in 2011.) As long-term employees, Respondent already had acquired substantial employment information for both discriminatees and had no need for any of the information required by the employment application. Clearly, Respondent was treating these discriminatees as new hires which invalidates the offers under Board law. By requiring the completion and submission of a new job application and documents to re-verify the employees' employment status, Respondent's purported offer of reinstatement to Sabillon and Reyes was more akin to an invitation to apply for a position than valid, unconditional offer of reinstatement and, accordingly, was not in compliance with the District Court Order.

### iii. Board Law, and IRCA Are Clear That A Respondent Cannot Re-Verify The Immigration Status Of Employees Reinstated After Being Unlawfully Terminated

Both Sabillon and Reyes testified that in addition to directing them to fill out new employment applications, Respondent also directed the employees to return later in the day and submit identification that Respondent would use to re-verify their immigration status.

In *Flaum Appetizing Corp. & Local 460/640, Indus. Workers of the World a/k/a Indus. Workers of the World, New York City Gen. Membership Branch,* 357 NLRB 2006, 2011 (2011), the Board held that an employer may not re-verify an employee that has been reinstated after being unlawfully terminated. The Board stated, "IRCA specifically provides that employers are not required to re-verify under these circumstances. Regulations promulgated under IRCA make

clear that while an individual remains employed, the employer has no obligation to re-verify, and further make clear that an individual is deemed to be 'continuing' in his employment when the individual is reinstated after 'wrongful termination, found unjustified by any administrative body.' 8 CFR § 274a.2(b),(1),(viii),(A),(5). More pertinently, while an individual remains employed, IRCA provides that re-verification may be an unfair immigration-related employment practice." *See also, Overstreet v. SFTC, LLC*, No. 13-CV-0165 RB/LFG, 2013 WL 3921178, at *10 (D.N.M. July 26, 2013) (concluding that interim reinstatement offer to discriminatees pursuant to a 10(j) order could not be conditioned upon re-verification of work authorization because employees had been employed by the employer, presumably had their employment status verified, their employment status was not in question before their discharges, and because of the immigration regulations).

With regard to immigration related documents, the Board has held it unlawful for an employer to require that discriminatees fill out additional immigration-related paperwork. *See, e.g., Domsey Trading Corp.*, 310 NLRB 777, 781 (1993) (employer violated the law by requiring unfair labor practice strikers, in order to qualify for reinstatement, to fill out and submit application forms and immigration forms), *enforced* 16. F.3d 517 (2d. Cir. 1994) (enforcing Board's order finding that employer avoided reinstatement by imposing unnecessary conditions such as the completion of a detailed application and immigration form).

### iv. Respondent Unlawfully Conditioned Sabillon And Reyes' Reinstatement On The Re-Verification Of Their Immigration Status

As Judge Feuerstein stated in her Memorandum and Order, it is presumed that Respondent complied with the requirements of IRCA when it hired Sabillon and Reyes in 2010 and 2011. Moreover, Respondent provided no evidence during the 10(j) proceeding (or the underlying ULP proceeding) that these workers were not authorized to work in the United States.

Thus, the only reason Respondent now wishes to re-verify these employees is to find a way to flout the District Court's clear directive to reinstate the discriminatees after Respondent unlawfully terminated them. Under both Board law and IRCA, Respondent in this case cannot re-verify Sabillon's or Reyes' immigration status upon reinstatement. Accordingly, the reinstatement is further invalidated by Respondent's demand that Sabillon and Reyes provide identification with which Respondent could verify their immigration status, and Respondent is in violation of the Injunctive Order for so requiring.

### v. Respondent Failed To File An Affidavit Of Compliance With The Court

In addition to the failure to reinstate the named discriminatees, Respondent has not complied with the Court's clear directive to file an affidavit with the Court setting forth the steps that Respondent took to comply with the District Court Order.

### d. Respondent Has Not Been Reasonably Diligent And Energetic In Attempting To Accomplish What Was Ordered

As demonstrated above, since this Court's July 5th Order, Respondent has engaged in willfully contumacious conduct to avoid compliance with the Order. Respondent has resisted compliance at every step of the 10(j) proceeding. Not only has Respondent not been reasonably diligent in attempting to comply with the Court's Order, but Respondent has blatantly resisted and flouted the most important mandate of the District Court Order- the reinstatement of the named discriminatees. Moreover, Respondent failed to file an affidavit of compliance with the Court and has offered no explanation. In fact, Respondent has failed to communicate at all with Petitioner about these contempt issues.

## IV. CONTEMPT SANCTIONS

### 1. Affirmative Purgation Order, Notice Remedies; Compliance Report

Petitioner requests that the Court require Respondent, its officers, agents, attorneys, owners and any person acting in concert or participation with it, to reinstate Augustin Sabillon and Roberto Reyes, in compliance with the terms of paragraph 2(a) of the July 5, 2016, Injunctive Order, without imposing any conditions on the reinstatement, including without requiring Sabillon or Reyes to fill out employment applications and without requiring Sabillon or Reyes to provide identification for the purpose of re-verifying their immigration status. The additional recommended remedies requiring Respondent to post notices to employees and to file a compliance report, are all normal civil contempt remedies in cases arising under the Act. *See, e.g., NLRB v. S. E. Nichols of Ohio, Inc.,* 592 F. 2d 326, 326-327 (6th Cir. 1974); *Oil, Chemical Workers v. NLRB,* 547 F.2d 575, 597 (D.C. Cir. 1976), cert. denied 431 U.S. 966 (1977); *NLRB v. Service Employees Local* 77, 123 LRRM 3213, 3214-3215 (9th Cir. 1986); *NLRB v. Teamsters Local 85,* 101 LRRM 2933, 2934-2935 (9th Cir. 1979); *NLRB v. Ironworkers Local 86,* 79 LRRM 2723, 2724 (9th Cir. 1972).

### 2. Compensatory Remedies

The purpose of civil contempt is not to punish but "to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Technologies, Inc.*, 369 F.3d 645, 657 (2d Cir. 2004), citing *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.* 885 F.2d 1, 5 (2d Cir.1989), and *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir.1979). *See also, Milburn v. Coughlin,* 83 F. App'x 378, 380 (2d Cir. 2003) ("The assessment of monetary sanctions in a civil contempt proceeding serves two purposes: to coerce future compliance and to compensate the plaintiff for any harms caused by the contempt.").

The recommended remedies in paragraph 4(b) of the Contempt Petition prayer for relief requires Respondent to pay the Board's costs and attorneys' fees. With respect to the Board's costs and attorneys' fees, it is well established that respondents who are found in civil contempt are commonly required to pay the expenses and attorneys' fees incurred by the Board in the investigation, preparation and presentation of contempt proceedings. *See, e.g., Levine v. Fry Foods, Inc.,* 108 LRRM 2208, 2212 (N.D. Ohio 1979), affd. 657 F.2d 268 (6th Cir. 198 1); *Asseo v. Bultman Enterprises, Inc.,* 951 F. Supp. 307, 312 (D.P.R. 1996). *See also, W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 665 fn. 5 (2d Cir. 1970) ("The plaintiff in a civil contempt case may recover not less than the expenses, including counsel fees, which it has incurred in enforcing the disobeyed order of the court."). Board attorneys' fees are charged at the "prevailing rate" for hourly rates charged by the private bar in the area. *See, e.g., NLRB v. Local 3, IBEW,* 471 F.3d at 407. Petitioner will maintain on a daily basis a record of the time spent on the contempt case by professionals. *See, Hensley v. Eckerhart,* 461 U.S. 424, 437 and n. 12 (1983); *Ramos v. Lamm,* 713 F. 2d 546, 553 (10th Cir. 1983).

The recommended remedies in paragraph 4(a) of the Contempt Petition prayer for relief requires Respondent to pay Augustin Sabillon and Roberto Reyes' lost wages and fringe benefits plus normal interest for the period between the effective date of the Injunctive Order – July 5, 2016 – until the time that Sabillon and Reyes are unconditionally reinstated to their former positions of employment.

It is also well settled that in civil contempt, "broad compensatory awards" are appropriate to make whole other parties injured by the contumacy. *United Mine Workers of America v. Bagwell,* 512 U.S. 821, 838 (1994), citing *Sheet Metal Workers v. EEOC,* 478 U.S. 421 (1986); *Paramedics Electromedicina Comercial,* 369 F.3d at 658 (compensatory damages should

correspond to the amount of damages); *NLRB v. J.P. Stevens & Co.*, 81 LRRM 2285 (2d Cir. 1972) (awarding backpay in contempt). Accordingly, to the extent that Sabillon and Reyes have lost wages and other benefits because of Respondent's failure to comply with the Court's Injunctive Order, they should be made whole by Respondent.

### 3. Prospective Fines

In order to coerce Respondent to fully comply with the terms of the injunctive Order and the Court's Contempt Order, and to refrain from further breaches of either Order in the future, Petitioner seeks the imposition of a prospective fine schedule. It is well recognized that prospective compliance fines may be assessed in a civil contempt proceeding in order to insure future compliance with court orders. *NLRB v. J.P. Stevens & Co.*, 81 LRRM 2285; *NLRB v. Local 3, IBEW*, 471 F.3d at 406. *See also, NLRB v. A-Plus Roofing*, 39 F.3d 1410, 1419 (9th Cir. 1994); *NLRB v. S.E. Nichols of Ohio, Inc.*, 592 F.2d at 327; *Humphrey v. Southside Electric Cooperative, Inc.* 104 LRRM 2589, 2592 (E.D. Va. 1979) (contempt proceeding under Section 10(j)). Daily compliance fines have been found appropriate in Board contempt proceedings. *See, e.g., NLRB v. Local 3, IBEW*, 471 F.3d at 405; *NLRB v. A-Plus Roofing*, 39 F.3d at 1419; *Clark v. Int'l Union, UMWA,* 752 F. Supp. 1291, 1294 (W.D. Va. 1990) (contempt proceeding under Section 10(j)).

Accordingly, Petitioner has requested a prospective fine of $10,000 against Respondent, and a daily compliance fine of $500 per day, upon the failure of Respondent to comply with each of paragraphs 3(a) through 3(f), and 4(a) and 4(b) of the recommended remedies in the Contempt Petition prayer for relief. *See, e.g., United States v. United Mine Workers,* 330 U.S. 258, 304 (1947); *Perfect Fit Ind., Inc. v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir.), cert. denied 459

U.S. 832 (1982). Further, Petitioner seeks a separate prospective fine of $5,000 against Respondent for each future violation of any other provision of the July 5, 2016, Injunctive Order.

## V. CONCLUSION

Based upon the foregoing, Petitioner has shown, by clear and convincing evidence, that Respondent did not, and is not, complying with the Court's Injunctive Order by refusing to unconditionally reinstate Augustin Sabillon and Roberto Reyes and by failing to file an affidavit with this Court detailing how it complied with the provisions of the July 5, 2016, Injunctive Order. Accordingly, Respondent should be found in contempt of the Injunctive Order, and the Court should impose upon Respondent the order requested in the Petition for Contempt, to purge Respondent of its contumacious conduct, and to coerce Respondent from engaging in further future breaches of the Court's Injunctive Order.

Respectfully submitted on this 22nd day of September, 2016.

Emily A. Cabrera

Henry J. Powell
Attorneys for Petitioner
National Labor Relations Board