UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Kathy Drew-King, Acting Regional Director
of

Region 29 of the National Labor Relations
Board,

Case No.: 16-cv-1916 (SJF)(AKT)

For and on behalf of the National Labor

Relations Board                    Petitioner,

-against-

DEEP DISTRIBUTORS OF GREATER NY,
INC. D/B/A THE IMPERIAL SALES,

                              Respondent.

RESPONDENT'S MEMORANDUM OF LAW
SUBMITTED IN OPPOSITION TO PETITIONER'S
MOTION FOR CIVIL CONTEMPT

Saul D. Zabell, Esq.
ZABELL & ASSOCIATES, P.C.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel.: (631) 589-7242
Fax: (631) 563-7475
Szabell@laborlawsny.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... ii

I. INTRODUCTION

II. FACTUAL OVERVIEW

     i.   Respondent's Compliance with Your Honor's Order ...............................2

          1. Reinstatement Offer One ...................................................... 2

          2. Reinstatement Offer Two .......................................................3

          3. First and Second Reading .......................................................5

III. ARGUMENT

     i.   Respondent's Offer to Reinstate was Unconditional ...............................7

     ii.   Board Law Does Not Provide an Express
          Prohibition on Re-Verification..............................................10

     iii.   Counsel for Respondent's July 26, 2016 On-Record
          Statements to the Court are the Functional
          Equivalent of an Affidavit ....................................................14

IV. CONCLUSION....................................................................16

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*INS v. Lopez–Mendoza,*
    468 U.S. 1032 (1984)............................................................................6

*Hoffman Plastic Compounds, Inc. v. N.L.R.B.,*
    535 U.S. 137.............................................................................................5,6

## FEDERAL COURT CASES

## United States Court of Appeals

*Del Rey Tortilleria, Inc. v. NLRB,*
    976 F.2d at 1120 ...................................................................................6

*Egbuna v. Time-Life Libraries, Inc.,*
    153 F.3d 184, 188 (4th Cir. 1998) ...................................................6

*Madeira v. Affordable Hous. Found., Inc.,*
    469 F.3d 219, 242–43 (2d Cir. 2006) ..............................................6

*N.L.R.B. v. A.P.R.A. Fuel Oil Buyers Grp., Inc.,*
    134 F.3d 50 (2d Cir. 1997) ...............................................................6

## NATIONAL LABOR RELATIONS BOARD DECISIONS

*Champ Corp.,*
    291 NLRB 803, 815 (1988) ...............................................................1

*Craw & Son,*
    244 NLRB 241 (1979) ........................................................................1

*Flaum Appetizing Corp.,*
    357 NLRB 2006, 2011 (2011) ......................................................3,5

*NTN Bower Corp.,*
    356 NLRB 1072, 1145 (2011) ......................................................1,2

*Performance Friction Corp.,*
    335 NLRB 1117 (2001) .................................................................1,2

*Rushton & Mercier Woodworking Co.,*
    203 NLRB 123 (1973) ...................................................................................1

*Sunol Valley Golf Club,*
    310 NLRB 357, 372 (1993) .........................................................................1

## STATUTES AND REGULATIONS

*United States Code*

8 U.S.C. § 1158...............................................................................................4

8 U.S.C. § 1160 ...............................................................................................4

8 U.S.C. § 1255 ...............................................................................................4

8 U.S.C. § 1324a .............................................................................................4

8 U.S.C. § 1324b ........................................................................................ 3-5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

Kathy Drew-King, Acting Regional Director
of

Region 29 of the National Labor Relations
Board,

For and on behalf of the National Labor

Relations Board          Petitioner,

-against-

DEEP DISTRIBUTORS OF GREATER NY,
INC. D/B/A THE IMPERIAL SALES

                     Respondent.

-------------------------------------------------------X-

Case No.: 16-cv-1916 (SJF)(AKT)

## I.    INTRODUCTION

Respondent, Deep Distributors of Greater NY, Inc., d/b/a "The Imperial Sales Inc." ("Respondent") has, in every respect, complied with Your Honor's July 5, 2016 Injunctive Order. As set forth below, this latest attack by Board Counsel is both factually inaccurate and intellectually dishonest. It merely represents the latest in a series of ongoing efforts by the National Labor Relations Board to harass, intimidate and condemn a small, family-owned business for the simple exercise of its Constitutionally protected right to oppose the representation of its employees by a Union. Surprisingly so, the exercise of these rights has so enraged National Labor

Relations Board that they have resorted to the manufacture of evidence and creation and dissemination of outright lies in its dogged pursuit of Respondent.

## II.  FACTUAL OVERVIEW

### i.  RESPONDENT'S COMPLIANCE WITH YOUR HONOR'S ORDER

a. *Within seven (7) days of the entry of the District Court Order, offer immediate reinstatement to Henry Hernandez, Augustin Sabillon, Jose Michel Torres, Jose Roberto Reyes, and Javier Reyes to their former jobs, without prejudice to their seniority or any other rights or privileges previously enjoyed;*

#### 1.  REINSTATEMENT OFFER ONE

On June 11, 2016, a reinstatement letter was sent to Jordan El-Hag, counsel for Henry Hernandez, Augustin Sabillon, Jose Michel Torres, Jose Roberto Reyes, and Javfier Reyes. That letter stated:

> "I write to offer immediate, interim reinstatement to their former jobs, without prejudice to their seniority or any other rights or privileges previously enjoyed to Henry Hernandez, Augustin Sabillon, Jose Michel Torres, Jose Roberto Reyes and Javier Reyes.
>
> Please advise your clients that if they are interested in reinstatement they are to appear ready, willing and able to work on July 15, 2016."

Shortly after, a copy of the letter was sent to Your Honor for the dual purpose of proving compliance with Court orders and to fend off the growing

list of accusations levied by Board Counsel. (*See* Exhibit 1)[1] On July 18, 2016, we again wrote Your Honor clarifying any issue as to why the reinstatement letter was sent to counsel known to represent the so-affected employees in the concurrent FLSA matter and also, before the National Labor Relations Board in this matter. (*See* Exhibit 2)  We attach a portion of the hearing transcript wherein Mr. El-Hag made an application to appear on behalf of, and represent the claimants (employees herein) before the National Labor Relations Board.  Importantly, this application was granted. (See Exhibit 3) We respectfully submit that our actions were, at all times, proper.  The representations of Board Counsel the contrary are materially false.  Specifically, we call the Court's attention to the fact Ms. Cabrera was seeming unconstrained by the truth when she writes that "El-Haj (sic) did not represent any discriminates or any party in the proceeding before the Board." (See Petitioner Memo. of Law at p. 8)  Despite the extension of this offer of reinstatement, no individual elected to return to work for Respondents.

## 2. REINSTATEMENT OFFER TWO

On July 26, 2016, the parties appeared before Your Honor, again as a direct result of the myriad of allegations emanating from the National Labor Relations Board. At that hearing, there was no finding of

---

[1] Exhibits 1-15 are attached to the Declaration of Saul D. Zabell, which has been filed contemporaneously with this Memorandum of Law.

wrongdoing, or non-compliance on the part of Respondent. Despite this fact, and merely in an effort to allay the unfounded suspicions of the National Labor Relations Board, Respondent agreed to have counsel re-send the offers of reinstatement directly to the so-affected individuals. After qualifying the appropriateness of our office undertaking such a procedure, those letters were sent on July 29, 2016. Mr. El-Hag was also copied on the mailings. (*See* Exhibit 4) That letter stated:

> "I write to offer immediate, interim reinstatement to your former position at the rate of pay you previously received, without prejudice to your seniority or any other rights or privileges previously enjoyed.
> If you are interested in reinstatement you are to appear ready, willing and able to work on August 19, 2016 at 11:00 a.m.
> Should you have any questions, or not be able to appear on the designated date, please contact me directly to discuss your issues."

No objection was raised in connection with the second unconditional offer of reinstatement. On August 19, 2016, two (2) individuals appeared at Respondent's place of business, Messrs. Sabillon and Reyes.

Because of prior issues with their propensity for truthfulness, their appearance at Respondent's office was videotaped by company President, Danny Bindra. The individuals were provided with an "Employee Information" form and Wage Theft Prevention Act materials; i.e., New York Labor Law LS 52 and 54 documents pursuant to Section 195.1 of the New York Labor Law. (*See* Exhibit 5) They were not provided with a job application. The documentation provided sought to confirm rates of pay, the employee's name, address, telephone number,

emergency contact information and reminded the employee that it was their responsibility to update the form. The information was necessary because upon distribution, it had been more than 8 months since they last worked for Respondent. In addition, the information was necessary for processing payroll. The employees were instructed to consult with whomever they wished, and to return the documents, but failed to do so.

At no time were the employees asked questions about their eligibility to work in the United States, or asked to complete an application for employment. Although we maintain we have an obligation to verify employee eligibility to employment the issue of their employment eligibility status was not raised when they appeared. The Application for Employment attached to the Petitioner's application is not a form used by Respondent. It appears to be a 2007 form application for a company called "Adams" as indicated in the bottom left side of the application. It was not given to any employees of Respondent.

    *3. Provide a list of current employees' names and addresses to the Union upon request;*

On July 11, 2016, a request was made by Ms. Sheri Preece for this information, and on July 18, 2016, the list was provided. (*See* Exhibit 6)

    *4. Within seven (7) days of entry of the District Court Order, post copies of the District Court Order at all locations where Respondent notices to employees are customarily posted, and grant to agents of the Board reasonable access to Respondent's facility to monitor compliance with the posting requirement;*

Beginning on July 11, 2016, Respondent began to post, on a continuous and ongoing basis, the full Memorandum and Order [ECF Doc. 21] on the only employee bulletin board located within Respondent's facility. (*See* Exhibit 7) Board Agent Henry Powell viewed the posting on August 11, 2016, and has not since sought further access. Though Your Honor indicated that only one Board agent was permitted to view the posting, Wester Febres, Union Agent was also permitted to view the posting. Respondent permitted Mr. Febres access in furtherance of its desire to demonstrate full, ongoing compliance with Court orders.

> 5. *Within fourteen (14) days of the entry of the District Court Order, convene a mandatory meeting of all employees on work time, and require a high level official of Respondent to read the District Court Order to all employees in the presence of the Union and the NLRB officials;*

## 3. FIRST AND SECOND READING

Respondent has complied, in all respects, with this order. (*See* attached Exhibit 8 picture of reading in front of three (3) National Labor Relations Board members including Emily Cabrera. A full recording is available of the reading) Though this has already been the subject of a contempt motion before Your Honor, the issue of compliance with this obligation has been well documented. Notwithstanding Ms. Cabrera's patently dishonest representations as to events that transpired at the reading, Your Honor issued no determination of non-compliance at the July 25, 2016 hearing. During which, Respondent again agreed to re-read Your Honor's Order and it was done so, without objection, on August 11, 2016. (*See* attached Exhibit 9 picture of reading in the presence of Henry Powell. A full video recording is available of the reading.)

6. *Within twenty-one (21) days of the entry of the District Court Order, file with the District Court, and serve upon Petitioner, an affidavit from a responsible official that describes with specificity how Respondent complied with the District Court Order, including the exact locations where Respondent has posted the materials required under this order.*

On July 25, 2016, Tony Bindra, Respondent's General Manager, submitted an affidavit in full compliance with the provisions of Your Honor Order. (*See* Exhibit 10) That affidavit, as well as the various letters submitted to Your Honor, demonstrate full compliance with the obligations imposed by the July 5, 2016 Order and subsequent emendations thereto. In addition to the Affidavit, Tony Bindra appeared at the compliance/contempt hearing convened on July 26, 2016. The content of the Affidavit, specifically all steps undertaken to comply with Your Honor's Order, were prominently discussed at the hearing. It appears that the Affidavit, though completed, may not have ultimately been filed with the Court. Though this may have been a technical violation of the Order, every step towards compliance with the July 5, Order was satisfied and documented in various Court filings. The National Labor Relations Board cannot now claim, as it does, that Respondent failed to advise them, or for that matter, this court, of all the steps undertaken to comply with the Order.

## III.   ARGUMENT

### I.   RESPONDENT'S OFFER TO REINSTATE WAS UNCONDITIONAL

The National Labor Relations Board focuses its instant application on the reinstatement of two (2) out of the five (5) former employees who were offered

unconditional reinstatement to their former positions. By virtue of its arguments, they concede, as they must, that Henry Hernandez, Jose Michael Torres, and Javier Reyes declined the first and second offers of unconditional re-employment. They offer no basis or explanation for why Augustin Sabillon or Jose Roberto Reyes failed to report to work for the first unconditional offer of re-employment or why they failed to complete the "Employee Information" sheet they were provided on August 19, 2016. Even if they objected to completing the form, they could have filled it out with their names, telephone numbers and emergency contact information and begun work. They refused to do so with no legitimate basis.

Petitioner fails to advise the court that Javier Reyes has been working consistently since October of 2015 and Augustin Sabillon similarly has been working since August of 2015 in a grocery store making no less than $2.00 per hour more than when he worked for Respondent. (Based upon information provided by Jordan El-Hag, Esq. counsel for Messrs. Reyes and Sabillon.) This information, purposely withheld by the Petitioner, is crucial to any analysis of Petitioner's arguments and the reality of whether Reyes and Sabillon have any desire to return to work or this application is just part of Petitioner's misplaced angst directed at Respondent for exercising their rights to protect themselves from the National Labor Relations Board.

Also of significance is Mr. Sabillon's documented history of recording his meetings with Respondent. (*See* Exhibit 11, NLRB proceeding) If Mr. Sabillon has made it his practice to record his dealings with Respondent in the past, it is

unlikely that he did not record his interaction with them on August 19, 2016. Perhaps he did and the recording does not reflect the content of the affidavit Petitioner has submitted on its and Mr. Reyes' behalf. Certainly, the content of the affidavits is not supported by Respondent's recordings.

Petitioner has demonstrated history of fabricating allegations in sworn affidavits, particularly in the underlying National Labor Relations Board hearing. (*See* Exhibit 12) Unfortunately, Board law prohibits Respondent from obtaining a copy of the witness affidavits. In this particular instance, we believe the National Labor Relations Board garners a benefit from being able to conceal the exaggerated level of dishonesty incorporated into the affidavits. Consequently, we are unable to submit the fraudulent affidavits and are only able to point out some of the numerous instances wherein prior testimony contradicts sworn affidavits created by Petitioner.

Affidavits obtained by the National Labor Relations Board with respect to Reyes and Sabillon cannot be credited as the Board has displayed a complete and utter lack of compunction in obtaining and submitting false and fraudulent information from individuals in this case.

Petitioner argues that "where the employer's offer of reinstatement treats a discriminatee as an applicant for employment, it is not a valid offer." (*See* Petitioner's Memo. of Law, at 18.) However, the only case Petitioner cites that is, in fact, about job applications – and job applications only – is *Performance Friction*

*corp.*, 335 NLRB 1117 (2001).[2]  Petitioner cites to a footnote, which, when read *in its entirety and in proper context*, states "Requiring employees to complete job applications is invalid, unless an employer can show a legitimate business reason." *Performance*, at 1124, n. 35.  As Petitioner concedes, a legitimate business reason justifies the use of an application.  (*See* Petitioner's Memorandum of Law, at 18.) Here, Respondent had a legitimate business reason to have Sabillon and Reyes execute an "Employee Information" form in that basic information were required for record-keeping and payroll purposes.  In sum, what Sabillon and Reyes were asked to fill out was 1) not an application, and 2) even if, in the unlikely event this Court

---

[2] The remainder of cases Petitioner cites are not applicable.  *Craw & Son* involved a physical examination, which implies that the employee could fail and would be denied employment.  *Craw & Son*, 244 NLRB 241 (1979).

*Rushton & Mercier Woodworking Co.* is similarly inapplicable.  *Rushton* involved an employer who attempted to comply with reinstatement orders by giving the reinstated workers "new hire" positions *which were not the same or the functional equivalent of their prior position.  Rushton & Mercier Woodworking Co.* 203 NLRB 123 (1973).  Here, there is no allegation Sabillon and Reyes were offered lesser positions.

Even more egregiously, Petitioner has willfully omitted essential parts of decisions in an attempt to mislead this court.  Citing to *Champ Corp.*, Petitioner cited "(employer violated the act by requiring returning striker to "execute an application... and accept employment as a new employee.").  Petitioner's Memorandum of Law, at 18.  The ellipsis is, in fact, that in addition to the application was, similarly to *Craw*, a physical examination.  *Champ Corp.*, 291 NLRB 803, 815 (1988).  As with *Craw*, this involves the implication that the employer had discretion in reinstating the employee, rendering this decision inapplicable to the case at bar.

In Petitioner's citation to *Sunol Valley Golf Club*, Petitioner again omits information which removes the case-law from being applicable to the current situation.  Petitioner cites to the case, stating "(unlawful to treat returning strikers as new hires who have to complete employment applications)." Petitioner's Memorandum of Law, at 18.  In reality, it was that applications *and an interview process* were implemented, which Petitioner conveniently fails to mention.  *Sunol Valley Golf* Club, 310 NLRB 357, 372 (1993).  In *Sunol*, again, the unlawful activity was not the application itself, but the implication that the employer had discretion whether to hire back the employee when, in fact, the offer must be unconditional.  *Id.*, at 358.

While *NTN Bower Corp.* did state that requiring former strikers to take steps beyond a union's unconditional offer to return, that case contained significantly more egregious facts, as the company was "threatening its employees, who were former strikers, with the loss of their reinstatement rights if they failed to sign Respondent's Return to Work Log" *NTN Bower Corp.*, 356 NLRB 1072, 1145 (2011).

finds the "Employee Information" form was an application, Respondent has shown a legitimate reason for seeking the completion of the form.

## II. BOARD LAW DOES NOT PROVIDE AN EXPRESS PROHIBITION ON RE-VERIFICATION

At no point did Respondent condition offers of reinstatement to Sabillon and Reyes. They were not required to re-apply for their positions. (*See* Exs. 13-15) While Respondent maintains that this Count should disregard Sabillon and Reyes's affidavits as not credible, in the unlikely event this Court finds otherwise, Petitioner's arguments on the law regarding re-verification of citizenship status are at odds with controlling precedent. By citing *Flaum Appetizing Corp.*, Petitioner contends that, "the Board stated 'IRCA specifically provides that employers **are not required to re-verify** under these circumstances. Regulations promulgated under the IRCA make clear that while an individual remains employed, the **employer has no obligation to re-verify**, and further make clear that an individual is deemed to be continuing in his employment when the individual is reinstated... More pertinently, while an individual remains employed IRCA provides that re-verification **may** be an unfair immigration-related employment practice.'" (See Petitioner's Memo. of Law, at 19-20, *emphasis added*.)

Emphasis has been added to show the manner by which Petitioner conflates the lack of an affirmative obligation with that of an express prohibition. The language Petitioner appears to couch its argument in is that, "IRCA provides that re-verification may be an unfair immigration-related employment practice." However, even a cursory review of the underlying Board decision reveals that the

*Flaum* Board based that language upon a statute which does not relate to Sabillon and Reyes.

The *immediate* follow-up sentence of the Board, which Petitioner at best misunderstood, and at worst, willfully ignored, expounds upon a situation where, in fact, re-verification constitutes an unfair business practice.[3] It is an unfair business practice <u>only where the employees as issue are protected under 8 U.S.C. § 1324b</u>. 8 U.S.C. § 1324b provides that:

> It is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual (other than an unauthorized alien, as defined in <u>section 1324a(h)(3)</u> of this title) with respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment--
> (A) because of such individual's national origin, or
> (B) in the case of a protected individual (as defined in paragraph (3)), because of such individual's citizenship status.

8 U.S.C. § 1324b.

(A) is, upon information and belief, immediately inapplicable as Petitioner contends that the alleged discrimination is due to citizenship status, not national origin. (B) requires a review of the definition contained within the statute under paragraph (3), which reads:

> As used in paragraph (1), the term "protected individual" means an individual who--

---

[3] "Specifically, IRCA provides, "A person's or other entity's request, for purposes of satisfying the requirements of section 1324a(b) of this title, for more or different documents than are required under such section or refusing to honor documents tendered that on their face reasonably appear to be genuine shall be treated as an unfair immigration-related employment practice if made for the purpose or with the intent of discriminating against an individual in violation of paragraph (1)." 8 U.S.C. § 1324a(a),(6). Paragraph 1, 8 U.S.C. § 1324b(1), (A), and (B), makes it an unfair immigration-related practice for a person to discriminate in respect to hiring or discharging an individual because of such individual's national origin or citizenship." *Flaum Appetizing Corp.*, 357 NLRB 2006, 2011 (2011).

(A) is a citizen or national of the United States, or

(B) is an alien who is lawfully admitted for permanent residence, is granted the status of an alien lawfully admitted for temporary residence under section 1160(a) or 1255a(a)(1) of this title, is admitted as a refugee under section 1157 of this title, or is granted asylum under section 1158 of this title; but does not include (i) an alien who fails to apply for naturalization within six months of the date the alien first becomes eligible (by virtue of period of lawful permanent residence) to apply for naturalization or, if later, within six months after November 6, 1986, and (ii) an alien who has applied on a timely basis, but has not been naturalized as a citizen within 2 years after the date of the application, unless the alien can establish that the alien is actively pursuing naturalization, except that time consumed in the Service's processing the application shall not be counted toward the 2-year period.

8 U.S.C. § 1324b(3).

Upon information and belief, Sabillon and Reyes do not qualify under these protections, as they do not fit the definition of a protected individual under paragraph (3). As such, the unfair employment practice of which Petitioner complains has not occurred, however, even if it did, it is not a violation of the law.

Setting aside the fact that no effort to re-verify the employees occurred, since 8 U.S.C. § 1324b does not apply to Sabillon and Reyes, there cannot exist any unfair employment practice. This is likely why the lone case which Petitioner cites to buttress its flawed interpretation of these provisions is a single, errant decision out of the District of New Mexico which has no controlling authority over the case at bar.

The NLRB's contentions are also in direct opposition to *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, which holds that "Under the

13

Immigration Reform and Control Act of 1986 (IRCA), if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status." *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, (2002). Further, "Employers who violate the Immigration Reform and Control Act of 1986 (IRCA) are punished by civil fines and may be subject to criminal prosecution." *Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, (2002). During the course of both the present and parallel FLSA action, Respondent has become aware of facts indicative that Sabillon and Reyes are unauthorized aliens.

The NLRB's position that Respondent was not allowed to re-verify, is immaterial because we engaged in no such action. The argument suggests that Respondent must violate the law in order to comply with the Court Order. This simply cannot be the case, and the NLRB's position has been *explicitly* rejected by Federal courts. *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 242–43 (2d Cir. 2006) (collecting cases and finding that "orders directing employers who have violated some other law to reinstate undocumented workers... conflict with federal immigration law is both direct and positive because compliance with the remedial order requires the employer to violate IRCA"); *accord Del Rey Tortilleria, Inc. v. NLRB*, 976 F.2d at 1120 ("[A]n illegal alien 'is plainly not entitled to prospective relief—reinstatement and continued employment—that probably would be granted to other victims of similar unfair labor practices.'" *(quoting INS v. Lopez–Mendoza*, 468 U.S. 1032 (1984)); *see also Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 184,

188 (4th Cir. 1998) ("In this instance, to rule Egbuna was entitled to the position he sought and to order TLLI to hire an undocumented alien would nullify IRCA, which declares it illegal to hire or to continue to employ unauthorized aliens").

For a more reasonable harmonization between the NLRB's mandate and other applicable Federal laws, *see N.L.R.B. v. A.P.R.A. Fuel Oil Buyers Grp., Inc.*, 134 F.3d 50 (2d Cir. 1997) *abrogated on other grounds by Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137 (2002) (holding that "reinstatement conditioned on aliens' satisfaction of IRCA's verification requirements was appropriate remedy"). Simply put, in order to comply with applicable federal laws, Respondent should have re-verified Sabillon and Reyes's citizenship status. Despite this fact, Respondent took no such action. Respondent's distribution of an Employee Information form and Wage Theft Prevention Materials was not violative of any of the overwhelming case law on the subject. The fact that the NLRB cited to a single case emanating out of the District Court of New Mexico, while *deliberately omitting the overwhelming amount of case-law directly on point and in opposition to its position*, smacks of being disingenuous and evidences an ethical shortcoming unacceptable of a government agency.

### III. COUNSEL FOR RESPONDENT'S JULY 26, 2016 ON-RECORD STATEMENTS TO THE COURT ARE THE FUNCTIONAL EQUIVALENT OF AN AFFIDAVIT

The purpose of the required affidavit was to inform the Court of steps which Respondent took in compliance with the Court's injunctive order. On July 26, 2016, Respondent, by and through its attorney, and provided a detailed narrative of the

steps undertaken by Respondent in connection with governing Orders of the Court. These remarks were on the record and issued by counsel of record.

As mandated by 32 C.F.R. § 776.42, "A covered attorney shall not knowingly... Make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the covered attorney." 32 C.F.R. § 776.42. The information provided by Respondent's attorney was material in that they gave the Court information requested in furtherance of the injunction. As such, Respondent's attorney could not knowingly make a false statement of material fact to the Court. This renders Respondent's on-record comments to the Court the functional equivalent of an affidavit.

Notwithstanding the above, in the unlikely event this Court finds Respondent has not complied with the injunction, Courts have noted that "[t]he failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt. *Dunn v. New York State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir. 1995). Civil contempt "includes failures in meaningful respects to achieve substantial and diligent compliance." *Casale v. Kelly*, 710 F. Supp. 2d 347, 359 (S.D.N.Y. 2010). Here, while not meeting the "strict requirements" of the injunctive order, "substantial and diligent compliance" was obtained. The mode of providing the Court with information (affidavit or attorney reporting) regarding compliance should not be considered such an insubstantial attempt as to warrant contempt. The underlying concern requiring the affidavit was to keep the Court

16

abreast of compliance with its directives, and Respondent has done so by and through its attorney and various court filings.

It should also be noted that civil contempt proceedings serve "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Utica Coll. v. Gordon*, 389 F. App'x 71, 74 (2d Cir. 2010). Here, there cannot be reasonable argument that Respondent, by providing information through its attorney instead of through affidavit, caused any losses or damage to Petitioner or those whose interests it represents. As there are no damages, the only request would be for specific performance *via* an affidavit. In this case, specific performance would simply be redundant, as the content of any putative affidavit has already been put on the record.

## IV. CONCLUSION

Based on the foregoing, Respondent respectfully requests that Petitioner's application be denied in its entirety, or in the alternative, that a hearing be held so that the the representations made by Messrs. Sabillion and Reyes be tested for accuracy and truthfulness.

Dated:    Bohemia, New York
        October 3, 2016

Respectfully submitted,

ZABELL & ASSOCIATES, P.C.
*Attorneys for Respondent*

By: _____

Saul D. Zabell
Zabell & Associates, P.C.
One Corporate Drive, Suite 103
Bohemia, New York 11716
Tel.: (631) 589-7242
Fax: (631) 563-7475
szabell@laborlawsny.com