UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

*****************************************************

KATHY DREW-KING, Acting Regional Director of
Region 29 of the National Labor Relations Board,
for and on behalf of the NATIONAL LABOR
RELATIONS BOARD

                      Petitioner        16-CV-1916
                                                                  (SJF)(AKT)
v.

DEEP DISTRIBUTORS OF GREATER NY, INC.
D/B/A THE IMPERIAL SALES INC.

                      Respondent

*****************************************************

<u>REPLY TO OPPOSITION FOR ADJUDICATION AND ORDER IN CIVIL CONTEMPT AND
FOR OTHER CIVIL RELIEF</u>

1. INTRODUCTION

In its Opposition to Petitioner's Motion for Civil Contempt, ("Opposition"), Respondent offers nothing more than hyperbole and spurious accusations of misconduct and conspiracy by the NLRB while offering little substantive argument that would detract from the fact that Respondent continues to avoid full compliance with this Court's Injunctive Order. Respondent is yet again wasting this Court's time by twisting facts and engaging in trickery in order to claim that it is in fact in compliance with the Injunctive Order. However, as will be discussed, Respondent's arguments are baseless and completely illogical. Given that Respondent has already been found to have failed to comply with certain portions of this Court's Injunctive Order, Respondent's frivolous arguments should be rejected and the Contempt Petition should be granted.

In its Opposition, after accusing the NLRB of "the manufacture of evidence and creation and dissemination of outright lies," Respondent offers just a few basic arguments. In essence, Respondent claims that it did not give employees any employment applications nor did it re-verify employees' work authorization status. Respondent then argues that even if it is found to have distributed employment applications and to have engaged in re-verification of immigration status, such conduct does not violate the law and does not render Respondent in contempt of the July 5, 2016, Injunctive Order. Petitioner submits this Reply brief in order to address these baseless accusations and frivolous arguments.

2. ON JULY 26 AND 29, 2016, THIS COURT DID FIND THAT RESPONDENT FAILED TO COMPLY WITH THE MANDATES OF THE JULY 5, 2016, INJUNCTIVE ORDER

In its continued efforts to avoid compliance with the District Court Injunctive Order of July 5, 2016, Respondent has once again resorted to name-calling, false accusations, and a re-writing of history in order to deflect attention away from its own unlawful conduct. Respondent incredibly argues that there was no finding at the July 26, 2016, hearing that Respondent failed to comply with the July 5, 2016, Injunctive Order. Respondent claims that Your Honor made "no determination of non-compliance at the July 25, 2016, hearing." (Opposition pg. 6) This is simply not true. Although the Court did not make explicit findings of non-compliance, it is apparent from the course of the hearing and the post-hearing order, that the Court considered Respondent's initial efforts at compliance insufficient. At the July 26, 2016, hearing Your Honor directed Respondent to mail the offers of reinstatement directly to the workers, re-read the District Court Order and permit agents of the NLRB and Union to be present in the warehouse during such reading, and directed Respondent to grant access to NLRB agents to view the posted

2

Injunctive Order. On July 29, 2016, Your Honor issued an Order setting forth in detail what Respondent had to do in order to actually comply with the District Court Injunctive Order. (Contempt Pet. Ex.E) Clearly, no such Order would have been issued had Respondent actually complied with the July 5th Injunctive Order. By making the false claim that there was no finding of non-compliance, Respondent is doing nothing more than playing a game that twists the words of this Court and re-writes history in order to suit its own goal of avoiding compliance.

3. THE REINSTATEMENT OF AUGUSTIN SABILLON AND JOSE ROBERTO REYES WAS NOT UNCONDITIONAL

    a. <u>The workers were in fact handed a job application.</u>

Both Augustin Sabillon and Jose Roberto Reyes testified that on the day that they returned to work, August 19, 2016, Tony Bindra handed both of them the employment application contained in Contempt Petition Exhibit J. (Contempt Pet. Exhibits L pg. 2, and M pg. 2) Respondent claims that it does not use this type of application and that it did not give this document to Sabillon or Reyes.[1] (Opposition pg. 4-5) In this regard, Respondent provided sworn statements from Tony Bindra, Danny Bindra, and Karina Cabrera so stating. (Opposition Exhibits 13-16) Consequently, Respondent asserts that either Sabillon and Reyes manufactured these documents or that Petitioner manufactured the application in order to prevent the employees' reinstatement and later claim that Respondent violated the District Court Order. Both arguments are absurd. Respondents' affidavits, intended to contradict the employees' mutually corroborative testimony, should not be credited. Respondents' affidavits attempt to

---

[1] Respondent claimed that the job application is for a company called "Adams" and not for Respondent. (Opposition pg. 5) The name "Adams" appears to be the name of the manufacturer of the form. At the end of the application there is a disclaimer that states that "this application is sold only for general use throughout the United States. .Adams assumes no responsibility. ." (Contempt Pet. Ex. J) The form is sold online as an "Adams" form. See e.g. http://www.staples.com/Adams-Employment-Application-Forms-8-1-2-inch-x-11-inch-1-Part/product_195990

3

support a factual scenario that is inherently incredible and nonsensical. Moreover, in the context of the administrative trial, the ALJ discredited Respondents' witnesses while finding the employees to be reliable and credible witnesses, contrary to Respondent's characterization of them.

First, it strains credulity to believe that Sabillon and Reyes, two unsophisticated warehouse workers, would have devised and implemented a complex legal plan to trap Respondent into violating the District Court Order. Such a conspiracy would have required an extensive knowledge of labor and immigration law that these two workers simply do not possess. Moreover, as evidenced by their affidavits, Sabillon and Reyes' native language is Spanish. The employment application is written entirely in English. Thus, Respondent would have this Court believe that Sabillon and Reyes, who do not speak fluent English (though they may understand some English words), somehow manufactured the multi-page employment application in order to submit to the NLRB so that contempt proceedings could be instituted. Such an argument is simply absurd.

Even more absurd is the notion that the Petitioner manufactured the employment application. As discussed in our Memorandum in Support of the Petition for Civil Contempt, and as evidence by our numerous letters and appearance before Your Honor, Petitioner has strongly advocated for Respondent to comply with the District Court Injunctive Order. After each of Respondent's breaches of its duty to comply with the July 5, 2016, Injunctive Order, Petitioner has immediately alerted this Court and engaged in every effort to secure compliance. The reinstatement of workers is the most powerful remedy available to the NLRB. This is so because reinstatement inures to the benefit of all workers not just the wrongfully terminated worker. The reinstatement of a wrongfully terminated worker is a powerful message to all employees that

their rights are being protected. Again, it strains credulity to believe that the NLRB would now decide to manufacture a job application that would prevent the reinstatement of the workers and cause the institution of time-consuming and costly civil contempt proceedings.

Finally, although Respondent repeatedly called Sabillon and Reyes untruthful, Administrative Law Judge Steven Davis, who heard their underlying unfair labor practice testimony and observed their demeanor during the underlying unfair labor practice hearing, found both employees to be credible witnesses. (ALJD pg. 18) Importantly, ALJ Davis discredited Respondent's witnesses, including Tony and Danny Bindra. (Id.) Moreover, Respondent's Opposition Exhibit 12, which is purported to be excerpts of Augustin Sabillon's testimony during the underlying unfair labor practice hearing which somehow shows how untruthful he is, is actually not the testimony of Sabillon. Rather, the excerpts are actually from the testimony of Union agent Wester Febres and Javier Reyes (not Jose Roberto Reyes).[2] Thus, Respondent's assertions regarding the truthfulness of Sabillon and Reyes are completely unfounded and constitute nothing more than unsubstantiated accusations.

  b. <u>The Petitioner correctly cited Board law which fully supports Petitioner's position.</u>

In its Opposition, Respondent claims that the Petitioner did not cite to any Board decision that held that an employer's requirement that a reinstated employee complete a job application, standing alone, invalidates the reinstatement. Respondent clearly does not understand the Petitioner's argument. In its Memorandum in Support of the Petition for Civil Contempt, Petitioner clearly argues that the reinstatement of Augustin Sabillon and Jose Roberto Reyes was invalidated by the fact that Respondent conditioned reinstatement on both the completion of a job application and the provision of identification with which Respondent would re-verify the

---

[2] See Transcript of Board Hearing Vol. 7, page 1005.

immigration status of the two employees. (See Memo In Support of Petition for Contempt pg. 19) Thus, Petitioner does not contend that this Court should find the reinstatement invalid based solely on the provision of the job applications. Rather, as discussed in *Performance Friction Corp.* 335 NLRB 1117, 1124-1125 (2001), a focus of Respondent's Opposition, a violation should be found because Respondent overall "did not treat their employment relationship as continuing" since Respondent required the employees to first complete applications and because Respondent told the employees they would have to be re-verified before returning to work. It is the fact that Respondent treated the employees as new hires, rather than as employees who had been in continued employment, and not the specific forms or requirements imposed, that invalidate Respondent's reinstatement.[3]

Moreover, contrary to its assertions, Respondent has still failed to offer any legitimate business justification for requiring Sabillon and Reyes to complete job applications other than stating that the information was necessary for "record-keeping and payroll purposes." (Opposition pg. 10) This statement is extremely vague and a similar justification was rejected by the Board in *Performance Friction*. In that case the Board stated, "Respondent showed no legitimate business reason other than to "update" its files; it could have accomplished that by merely requiring Rowe to confirm her address or complete a new emergency contact form. PFC gave Rowe no assurances that her application was being used merely to update its records and that she was not being treated as a new employee, *Ivaldi v. NLRB,* 48 F.3d 444, 452-453 (9th Cir. 1995)." *Performance Friction Corp.* 335 NLRB 1117, n. 35. Here, Respondent's claim that the information was necessary for "record keeping" and "payroll" is just as vague and unspecific

---

[3] For this reason, Respondent's discussions of other cases cited by Petitioner (Opposition, pg. 10 n. 2) misses the mark.

6

as the justification given in *Performance Friction*. Moreover, Respondent gave Sabillon and Reyes no assurances regarding the purpose of the applications.

Furthermore, Respondent's argument that the job application was manufactured is completely illogical and should be rejected. As mentioned above, Sabillon and Reyes are credible witnesses who have no motivation to prevent their own reinstatement. Conversely, Respondent has every motivation to lie in order to prevent the reinstatement of workers that it had unlawfully terminated. The fact that Respondent has already engaged in conduct to avoid compliance fully supports the conclusion that they have continued their efforts to avoid compliance by treating these workers as new employees and, among other things, requiring them to complete job applications.

Respondent's accusations (Opposition pg. 8) that: 1) the employees did not accept the first, invalid, offer of reinstatement of June 11, 2016, and 2) that they did not complete the forms provided to them on August 19, 2016, are immaterial to the issue of Respondent's noncompliance. The June 11 offer of reinstatement was never made to the employees and there is no evidence that they even knew of the offer in time to accept it within Respondent's short deadline. Further, based on the fact that the employees never received the offer, the District Court on July 26, ordered Respondent to make valid offers of reinstatement directly to the employees. With respect to the job application given to the employees on August 19th, the employees were not under any obligation to fill out new employment applications when they showed up ready to work because, as stated above, Board law is clear that Sabillon and Reyes should not have been treated as new employees. Similarly irrelevant is the fact that the employees sought and obtained substitute employment after Respondent unlawfully terminated them. (Opposition, pg. 8.) An employee's current work status is not part of the legal analysis of

7

whether that employee is entitled to reinstatement, and Respondent's accusation in this regard is baseless, unfounded and shows a lack of understanding of the law.

4. RESPONDENT'S ARGUMENT REGARDING THE ALLEGED IMMIGRATION STATUS OF THE WORKERS HAS ALREADY BEEN REJECTED

With regard to re-verification of immigration status, Respondent's defense boils down to the same argument it made in opposition to the underlying Petition for Injunctive Relief- that Sabillon and Reyes are not authorized to work in the United States and are therefore not entitled to the protections of the Immigration Reform and Control Act (IRCA) or to reinstatement. This argument was already rejected by this Court. Your Honor held in the Injunctive Order of July 5, 2016, that Respondent "has not provided any evidence that the discharged employees were not authorized to work in the United States. (Contempt Pet. Ex. A, pg. 16) In the current Opposition to the Petition for Civil Contempt, Respondent once again offers no evidence to support its recycled claim that Sabillon and Reyes lack work authorization status. Respondent vaguely argues that "Respondent has become aware of facts indicative that Sabillon and Reyes are unauthorized aliens." (Opposition pg. 14) No actual evidence in this regard was presented. Rather, as it did during the underlying unfair labor practice proceeding, Respondent made an unlawful, unfounded threat against these workers based on nothing more than speculation at best, and discrimination at worst.

Since both Sabillon and Reyes worked for Respondent for substantial periods of time, it is presumed that Respondent complied with the requirements of IRCA throughout their employment. Since there is no evidence that Sabillon and Reyes lack work authorization status, they are in fact subject to the full protections of IRCA and are in fact protected from unlawful re-verification as set forth in Petitioner's Memo in Support of Petition for Civil Contempt at pages

8

19-21. With regard to Respondent's claim that it did not actually re-verify the immigration status of these workers, or threaten to re-verify, as already discussed, both Tony and Danny Bindra were found to be incredible witnesses by ALJ Davis. Therefore, their testimony should not be credited. Consequently, Respondent's arguments regarding re-verification should be rejected.

5. RESPONDENT DID NOT FILE AN AFFIDAVIT WITH THIS COURT DETAILING THE MANNER IN WHICH IT COMPLIED WITH THE COURT'S INJUNCITVE ORDER

Respondent does not dispute that it failed to file an affidavit with the District Court by July 21, 2016, detailing the manner in which it complied with the July 5, 2016, Injunctive Order. Respondent simply claims that this Court should conclude that from all of Respondent's correspondence and alleged statements made to the Court that it in effect filed an affidavit. It also argues that no party was damaged by its failure to file an affidavit so contempt is not warranted. These arguments are meritless.

The Injunctive Order clearly directed Respondent to file with the Court and serve Petitioner, an affidavit detailing the steps it took to comply. Respondent argues that its purported detailed statements on the record at the July 26th hearing and correspondence with the Court amount to such an affidavit. It contends that this is a 'technical violation" that does not meaningfully affect its compliance with the Order. However, when combined with Respondent's other egregious actions to avoid compliance, Respondent's failure to provide the affidavit shows that Respondent did not try to obtain "substantial and diligent" compliance. Rather, it shows the opposite. Further, Respondent's argument that failing to provide the affidavit did not cause any loss to any party misses the point. It is not the mere failure to provide the affidavit, but Respondent's overall failure to comply with the Injunctive Order that harms the claimants and, to

some degree, thumbs its nose at the Court. In this regard, Respondent arguing that its statements and correspondence amount to complying with the Court Order, should be rejected.

6. CONCLUSION

In sum, Respondent has again avoided compliance with the July 5, 2016, Injunctive Order by refusing to unconditionally reinstate Augustin Sabillon and Jose Roberto Reyes and by failing to file an affidavit with this Court detailing its compliance with the Injunctive Order. In its Opposition, Respondent offers nothing more than unsubstantiated accusations of government conspiracy and recycled arguments regarding employees' immigration status which should all be rejected.

Augustin Sabillon and Roberto Reyes reported for work on August 19, 2016, with the intention of working on that day as was their right, pursuant to the Injunctive Order of July 5, 2016. Respondent refused to allow them to work and instead placed unlawful conditions on their reinstatement. This occurred even after Respondent had been previously told to fully comply with the July 5, 2016, Injunctive Order at the July 26, 2016 hearing. As detailed in our previous filings, the Courts and Board law make it abundantly clear that the employees were to be recalled to their former positions without loss of seniority or other benefits, and not as new employees. Instead, Respondent chose to make them re-apply for employment and threatened them with re-verification. Respondent is now attempting to use this unlawful conduct to force a hearing to further prolong the injunction process in order to avoid compliance with the Injunctive Order. Respondent's initial failure to comply led to the hearing on July 26th, and when added to this second failure to comply show a marked indifference to the Court's Injunctive Order and a complete unwillingness to comply with this Court's directives. Petitioner respectfully requests

that this not be permitted and that Respondent be compelled to comply with the District Court Injunctive Order through an Order of Civil Contempt.

Respectfully submitted on this 6th day of October, 2016.

*Emily A. Cabrera*
Emily A. Cabrera

*Henry J. Powell*
Henry J. Powell
Attorneys for Petitioner
National Labor Relations Board